# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHESTER JOHNSON and VICKIE JOHNSON,**

**Plaintiffs,**

**-vs-**                                         **Case No. 6:05-cv-1256-Orl-22KRS**

**B.J. JONES, Chief Judge, Prairie Island Mdewakanton Dakota Community,**

**Defendant.**

_____

## ORDER

Petitioners Chester and Vickie Johnson, husband and wife, challenge an American Indian tribal court's dependency determination regarding the couple's two biological children.  Chester Johnson and the children are enrolled members of the Prairie Island Mdewakanton Dakota Community, a recognized Indian tribe.  Vickie Johnson is not a member of the tribe.[1]  The Johnsons sue B.J. Jones, the tribal court judicial officer who presided over the child dependency proceedings. Essentially, the Johnsons contend that the tribal court lacks jurisdiction over the children because the children were not domiciled, or otherwise present, on tribal land when the tribal court first exercised custody over them.  It is undisputed that when the tribe, with the assistance of Florida child welfare and law enforcement authorities, removed the children from the Johnsons' home in Florida based on allegations of abuse and neglect, the children and the Johnsons were living in Florida.  It is also undisputed that the tribe's reservation lands are located in Minnesota, not Florida.

_____

[1]Vickie Johnson also has a non-Indian daughter.  That child is not involved in this dispute.

The Johnsons seek habeas corpus relief pursuant to 25 U.S.C. § 1303.  That statute provides: "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."

Judge Jones has moved to dismiss the action on various grounds, including lack of subject matter jurisdiction, sovereign immunity, and failure to exhaust tribal remedies.  *See* Doc. 21. The Johnsons have responded with a legal memorandum opposing the motion.  *See* Doc. 22.  A hearing on the motions was held on October 31, 2005.  After carefully considering the matter, the Court concludes that it lacks subject matter jurisdiction over this dispute.  Accordingly, the petition for writ of habeas corpus must be dismissed.

It is well-settled that Indian tribes possess inherent sovereign authority over their tribe members.  *See United States v. Wheeler,* 435 U.S. 313, 322-28 (1978).[2]  This power does not depend on a grant of authority from the federal government; it exists by reason of original tribal sovereignty which pre-existed "the arrival of non-natives on this continent."  *Native Village of Venetie I.R.A. Council v. State of Alaska,* 944 F.2d 548, 556 (9th Cir. 1991); *see also Sanders v. Robinson,* 864 F.2d 630, 632 (9th Cir. 1988) ("Tribal authority is inherent in the tribes' retained sovereignty; it does not arise by delegation from the federal government;" citing *Wheeler*, 435 U.S. at 328).  "The practical result of this doctrine is that an Indian tribe need not wait for an affirmative grant of authority from Congress in order to exercise dominion over its members."  *Venetie*, 944 F.2d at 556.  "Sovereign authority is presumed until Congress affirmatively acts to take such authority away."  *Id.* (citing *Wheeler*, 435 U.S. at 323).  Accordingly, "[t]he point to be emphasized is that when a question of

_____

[2]An unrelated aspect of *Wheeler* has been superseded by statute.  *See United States v. Lara*, 541 U.S. 193, 207 (2004).

tribal power arises, the relevant inquiry is whether any limitation exists to *prevent* the tribe from acting, not whether any authority exists to *permit* the tribe to act." *Id.* (internal quotation marks and citation to treatise omitted).

Moreover, this sovereign authority extends beyond an Indian tribe's territorial boundaries. *See John v. Baker,* 982 P.2d 738, 755 (Alaska 1999) ("Tribes not only enjoy the authority to exercise control within the boundaries of their lands, but they also possess the inherent power of regulating their internal and social relations" (internal quotation marks and footnote omitted)).  Hence, "[e]ven though a member of an Indian tribe may be outside the territorial boundaries of the reservation, the tribal government may regulate the absent member's affairs involving questions of membership . . . and questions of domestic relations." *Matter of Guardianship of D.L.L.,* 291 N.W.2d 278, 281 (S.D. 1980) (internal citations omitted).

"[T]ribal courts may also have jurisdiction to resolve civil disputes involving nonmembers, including non-Indians when the civil actions involve essential self-governance matters such as membership or other areas where the exercise of tribal authority is vital to the maintenance of tribal integrity and self-determination." *John,* 982 P.2d at 756 (internal quotation marks and footnotes omitted); *see also Sanders,* 864 F.2d at 633 ("Tribal courts have consistently been recognized as appropriate forums for the adjudication of disputes affecting important personal and property interests of Indians and non-Indians;" citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978)).[3]

A custody dispute involving an Indian child "lies at the core" of a tribe's sovereignty; "the right to determine custody of Indian children . . . infringes on tribal self-governance." *John,* 982 P.2d

---

[3]The  Johnsons do not argue that Vickie Johnson's non-Indian status prevents the tribe from making custody determinations concerning her children.

at 758 (internal quotation marks omitted).  As Congress recognized in the Indian Child Welfare Act, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children[.]" 25 U.S.C. § 1901(3).

"A tribe's inherent sovereignty to adjudicate internal domestic custody matters depends on the membership or eligibility for membership of the child." *John,* 982 P.2d at 759.  This "is consistent with federal statutes such as the [Indian Child Welfare Act], which focuses on the child's tribal membership as a determining factor in allotting jurisdiction." *Id.* (citing 25 U.S.C. § 1903(4)). Additionally, "[c]onsent of both parents may be an alternative basis for tribal court jurisdiction in child custody cases, as federal law supports the determination that tribes have jurisdiction over consenting nonmembers in some situations." *John,* 982 P.2d at 759 n.141 (citing *Montana v. United States*, 450 U.S. 544, 565 (1981) as "recognizing a tribe's power to regulate activities of nonmembers who enter consensual relationships with the tribe or its members").

In light of the foregoing principles, this Court is powerless to interfere with the tribal court's exercise of jurisdiction over the Johnsons' two children.  The dependency proceeding involves a domestic matter of paramount importance to Indian tribes, over which this tribe possesses inherent sovereign authority.  The fact that the Johnsons' two children were located outside the confines of tribal lands presented no impediment to the tribe's exercise of jurisdiction over them.  The children's tribal membership alone is a sufficient nexus for the exercise of tribal authority.  Extra-territorial jurisdiction is recognized by federal court decisional authority and is authorized by tribal law.  In the latter regard, Title I, Chapter II, Section 1(c) of the tribe's judicial code provides: "The jurisdiction of the Tribal Court shall extend to: . . . (c) All members of the Tribe, wherever located, exercising

tribal rights pursuant to federal, tribal or state law." Ex. 3 to Doc. 2.[4]  During the course of the dependency proceedings, the tribal court expressly determined that Chester Johnson and the two children "benefit[ted] from their tribal membership by exercising tribal rights when they reside off the reservation." *In Re the Matter of C.J. and C.J., Alleged Dependent and Neglected Children*, No. CC-0930-04 (Children's Court of the Prairie Island Mdewakanton Dakota Community December 20, 2004) (memorandum decision and order) (Ex. 2 to Doc. 2 at 5).  The tribal court noted that Chester and the two children received per capita gaming benefits, that Chester was "allowed to vote in tribal elections and to participate in decisions regarding tribal government and policies addressing the future of the Tribe," and that "the children [were] eligible to receive various benefits through the [tribe] including educational benefits and the protections afforded by the Child Welfare office." *Id.* at 10. Finally, a Florida court previously declined to exercise subject matter jurisdiction over the issue of the children's custody, determining that the tribe has exclusive jurisdiction in the matter.  *See Chester Johnson and Vickie Johnson v. Ronald Johnson and Kathy Johnson*, No. 05-2004-DR-024801 (Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida February 21, 2005) (order granting defendants' motion to dismiss) (included in Ex. 2 to Doc. 21).  Under these collective circumstances, this Court cannot interfere with the tribe's child dependency determination without impermissibly intruding in the tribe's sovereign affairs.

Beyond the tribal sovereignty impediment, habeas corpus is an improper means of challenging the tribe's dependency determination.  In that regard, "habeas corpus relief under 25 U.S.C. § 1303 is generally not available to challenge the propriety or wisdom of a tribal court's decision in a child

---

[4]The Johnsons contend this provision exceeds the scope of the tribe's constitution.  However, that issue should be considered and decided by the tribal court, not this Court.

custody dispute." *Azure-Lone Fight v. Cain,* 317 F. Supp. 2d 1148, 1150 (D.N.D. 2004); *see also Weatherwax on Behalf of Carlson v. Fairbanks*, 619 F. Supp. 294, 295-96 (D. Mont. 1985); *Sandman v. Dakota*, 816 F. Supp. 448, 451 (W.D. Mich. 1992); *LaBeau v. Dakota*, 815 F. Supp. 1074, 1076-77 (W.D. Mich. 1993).[5]  In the Court's view, this limitation applies with equal force to child dependency proceedings.

Finally, even if subject matter jurisdiction did exist, the Johnsons' failure to exhaust their tribal remedies prevents this case from proceeding.  "[A] federal court should not entertain a challenge to the jurisdiction of a tribal court until after a petitioner has exhausted the remedies available in tribal court." *Azure-Lone Fight,* 317 F. Supp. 2d at 1150 (citing *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 856 (1985)); *see also Gillette v. Marcellais,* 2004 WL 2677268 *3 (D.N.D. 2004) (holding that petitioner was required to exhaust his tribal remedies before seeking habeas review under § 1303).  "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987).  There are exceptions to the exhaustion

---

[5]In *DeMent v. Oglala Sioux Tribal Court,* 874 F.2d 510 (8th Cir. 1989), the Eighth Circuit did allow a father to pursue a habeas action challenging a tribal court's jurisdiction in a child custody case.  However, *DeMent* is distinguishable.  In that case, the tribal court exercised jurisdiction over the child custody dispute and refused to enforce a California decree awarding custody to the father.  Accordingly, the Eight Circuit stated, "we cannot overlook the fact that the basic dispute in this case is whether California or the tribe had jurisdiction to determine the custody of [the father's] children." 874 F.2d at 513.  The appellate court also remarked: "This case no longer represents a child custody battle; it has become a dispute over whether a tribal court violates a non-Indian's due process rights by refusing to give full faith and credit to a state custody decree." *Id.* at 515.  It is thus clear that the full faith and credit issue was central to the Eighth Circuit's decision to allow the father to pursue habeas relief.  The present case, in contrast, does not involve competing custody decrees.  Accordingly, there is no reason to except this case from the general prohibition against exercising habeas jurisdiction in child custody disputes.

requirement, namely, "where the assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; where the tribe's exercise of authority is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction." *Azure-Lone Fight,* 317 F. Supp. 2d at 1151 (citing *National Farmers Union*, 471 U.S. at 855 n.21). However, parties may not be relieved from the exhaustion requirement "by *merely alleging* that tribal courts will be incompetent or biased." *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation*, 27 F.3d 1294, 1301 (8th Cir. 1994) (emphasis in original).

It is undisputed that the Johnsons have not yet exhausted their tribal remedies. They have appealed Judge Jones' dependency determination to the tribe's appellate court and have filed an initial brief. That process must be allowed to run its course. Although the Johnsons contend the tribal court is beholden to Chester Johnson's relatives who hold high positions in the tribe and who are adverse to the Johnsons, they have not presented anything beyond supposition to support these claims. Such unsupported allegations of bias and futility are insufficient to satisfy the exception to the general exhaustion rule.[6]

Based on the foregoing, it is ORDERED as follows:

1. Respondent B.J Jones' Motion to Dismiss (Doc. 21), filed September 28, 2005, is GRANTED.

2. This action is DISMISSED for lack of subject matter jurisdiction.

3. The Clerk shall close this case.

---

[6]In light of the foregoing determinations, the Court need not reach Judge Jones' remaining dismissal arguments.

-7-

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on November 3, 2005.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party